UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**NETVERSANT SOLUTIONS III LLC,**       Chapter 7
    Debtor                          Case No. 16-12479-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~

# MEMORANDUM

Whereas, On June 30, 2016 an involuntary petition under Chapter 7 was filed against Netversant Solutions III LLC (the "Debtor"); and

Whereas on October 17, 2016, the Court entered an order for relief; and

Whereas, on August 8, 2018, the Chapter 7 Trustee filed a Motion to Approve Compromise (the "Compromise Motion") pursuant to Fed. R. Bankr. P. 9019 and MLBR 9019-1 seeing the entry of an order approving the compromise of certain mechanics's lien claims that have been asserted by the Debtor's creditors against UMass Memorial Medical Center, Inc. ("UMass Memorial"); and

Whereas, the Trustee represented that as a result of the proposed compromise the bankruptcy estate would receive a payment of $67,965.67; and

Whereas, the Trustee in his Motion further represented the following:

> . . . Prior to the Petition Date, the Debtor was in the business of providing technology services to its customers, including the installation of computer systems and wiring. Relevant to this Motion, on or about March 1, 2016, the Debtor and UMass Memorial entered into a certain Service Agreement pursuant to which the Debtor agreed to install cabling at UMass Memorial's

1

facilities (the "Service Agreement"). In connection with the performance of the Debtor's work for UMass Memorial, the Debtor obtained materials from Communications Supply Corporation, a subsidiary of WESCO Distribution, Inc. ("CSC"), and the Debtor subcontracted for workers from IBEW Local Union No. 96 ("Local 96").

. . . On or about May 12, 2016, UMass Memorial was served with a levy from the Internal Revenue Service (the "IRS") which levied amounts due to the Debtor up to $270,415.87.

. . . In May 2016, with the knowledge and agreement of the Debtor, UMass Memorial made certain payments to the IRS totaling $149,085.00 in response to the levy.

. . . The Debtor did not complete its work under the Service Agreement with UMass Memorial. The Debtor also did not pay for all of the prepetition materials it purchased from CSC and it did not pay for the benefits associated with the labor provided by the Local 96 for the work at UMass Memorial.

. . . As of the Petition Date, UMass Memorial had—and continues to hold—the amount of $199,123.00 which would otherwise be due to the Debtor for its prepetition work on the UMass Memorial job (the "Funds").

. . . On June 17, 2016, CSC recorded two Notices of Contract and Statements of Account at the Worcester County Registry of Deeds.

. . . On or about September 12, 2016, CSC filed an action in the Worcester County Superior Court entitled Communications Supply Corporation, a subsidiary of WESCO Distribution, Inc. v. UMass Memorial Medical Center, Inc. and Netversant Solutions III, LLC, Civil Action No. 1685CV01358-D (the "CSC Lien Action"), to enforce its mechanic's liens against UMass Memorial's real estate for the $155,927.00 that the Debtor failed to pay CSC for materials sold and delivered to the UMass Memorial job.

. . . On July 7, 2016, Local 96 recorded three Notices of Contract and Statements of Account at the Worcester County Registry of Deeds.

. . . On or about October 4, 2016, Local 96 and the IBEW Local 96 Funds (together, the "Local 96 Entities") filed an action in the Worcester County Superior Court entitled Matthew Ostrow and Leo E. Miller, Jr., as they are Trustees, Health & Welfare Fund IBEW Local 96, Pension Fund Local 96 –

2

<u>IBEW, and Annuity Plan IBEW Local 96; Leo E. Miller, Jr., as he is Trustee, Worcester Joint Apprenticeship and Training Fund; Lawrence J. Bradley, as he is Executive Secretary-Treasurer, National Electrical Benefit Fund; J. David Keaney, as he is Local Administrator, National Labor Management Cooperation Committee; and IBEW Local Union No. 96 v. UMass Memorial Medical Center, Inc. and UMass Memorial Health Care, Inc.</u>, Civil Action No. 1685CV01492-D (the "Local 96 Lien Action"). The Local 96 Lien Action sought to enforce its mechanic's liens against UMass Memorial's property for a minimum of $116,318.00 that the Debtor failed to pay the Local 96 Entities for benefits due to union workers.

. . . UMass Memorial sought to settle the mechanic's liens asserted in the CSC Lien Action and Local 96 Lien Action from the Funds and has negotiated agreements (the "Releases") with CSC and the Local 96 Entities that would resolve the liens and turnover the balance of the Funds, namely $71,084.67, to the bankruptcy estate. . . .

. . . The Trustee is in agreement with the settlement reached by UMass, CSC and the Local 96 Entities and seeks approval for the same in order to facilitate the turnover of $71,084.67 to the bankruptcy estate;

and

Whereas, the Trustee further represented that UMass Memorial, upon approval of the compromise, will distribute $51,300.00 to CSC; $71,738.33 to the Local 96 Entities; and $71,084.67 to the bankruptcy estate and retain $5,000.00; and

Whereas, the Trustee stated that he would address the IRS claim as part of the bankruptcy case and that he and UMass Memorial would waive any and all claims against each other and the bankruptcy estate; and

Whereas, Patriarch Partners Agency Services, LLC ("PPAS"), in its capacity as Administrative Agent "under (i) that certain Credit Agreement, dated January 6, 2009 (the "<u>Credit Agreement</u>"), between NetVersant Acquisition LLC, NetVersant Acquisition II LLC, NetVersant Acquisition III, LLC, NV Acquisition LP, and NV Acquisition II, LP

3

(collectively, the "Borrowers"), the Lenders (as defined therein), and PPAS, (ii) that certain Security Agreement, dated January 6, 2009, between the Borrowers, the Lenders, and PPAS, and (iii) that certain Intellectual Property Security Agreement (Patents & Trademarks), dated January 6, 2009, between the Borrowers, the Lenders, and PPAS (collectively, the "Credit Facility Documents")," filed an Objection to the Chapter 7 Trustee's Motion; and

Whereas, in its Objection, PPAS asserted that UMass Memorial owes the Funds to the Debtor on account of services the Debtor rendered to UMass Memorial prior to the Petition Date and that the Trustee's proposed settlement provides for payment of approximately two-thirds of these Funds to UMass Memorial, CSC, and Local 96, leaving the Estate with a mere $71,084.67; and

Whereas, PPAS argued that "[t]he Trustee's boilerplate and conclusory 9019 Motion falls well short of this standard [for approval of a compromise] . . . the 9019 Motion does not contain an adequate basis for this Court and parties in interest to evaluate the proposed settlement, let alone make a determination as to whether it is fair and equitable;" and

Whereas, PPAS further argued that "the proposed settlement is an attempt to circumvent the Bankruptcy Code's priority scheme by permitting UMass Memorial, CSC, and Local 96 to receive distributions ahead of PPAS" because it filed a proof of claim in the amount of $141,618,478.70 secured by liens on or interests in substantially all of the Debtor's assets; and

4

Whereas, PPAS also observed UMass Memorial owes the Funds to the Debtor and that, absent the settlement agreement, it would be obligated to pay the Funds to the bankruptcy estate; and

Whereas, PPAS adds;

> the settlement agreement provides that CSC will receive $51,300.00, Local 96 will receive $71,738.33, and (confusingly) UMass Memorial will receive $5,000.00. This is despite the fact that (i) UMass Memorial was not scheduled as a creditor and never filed a proof of claim in this case, and (ii) CSC and Local 96 have filed unsecured claims against the Debtor;

and

Whereas, the Trustee filed a Reply to PPAS's Objection and in support of his Compromise Motion in which he stated:

> the proposed Settlement is the result of the Trustee's prudent consideration and judgment regarding all relevant facts and circumstances at issue, and primarily the fact that: (i) the Debtor's prepetition subcontractors, CSC and Local 96, have asserted valid mechanic's lien claims against a project owned by UMass Memorial for amounts the Debtor failed to pay them; and (ii) that as a result of the pending mechanic's lien claims, UMass Memorial has asserted its right to recoup any liability it incurs to CSC and/or Local 96 due to the Debtor's failure to make payment, against $199,123 in funds it would otherwise owe to the Debtor (the "Funds");

and

Whereas, the Trustee also asserted that he had evaluated the mechanics's lien claims of CSC and the Local 96 Entities and determined that they have viable claims "likely to result in judgment in their favor for at least $270,000.00, which exceeds the amount of the Funds;" and

Whereas, the Trustee further opined that if CSC and Local 96 were to prevail after their respective mechanics's lien trials, the mechanic's lien statute, Mass. Gen. Laws ch.

254, § 18, would permit this Court to order the sale of UMass Memorial's property in whole or part and that, in order to avoid the sale, UMass Memorial would have no choice but to pay CSC and Local 96;[1] and

Whereas, the Trustee also asserted that UMass Memorial would have a right of recoupment against the Funds, citing, inter alia, In re Blackstone Fin. Holdings, LLC, 573 B.R. 1, 9 (Bankr. D. Mass. 2017) ("'[R]ecoupment is the satisfaction of an obligation by the crediting against it of a reciprocal obligation arising from the *same transaction*…'"); and

Whereas, the Trustee stated that recoupment would permit UMass Memorial to satisfy the lien claims and credit those amounts against the Funds otherwise due to the Debtor; and

Whereas, the Court held a hearing on the Trustee's Motion and PPAS's Objection on January 3, 2019 and afforded the parties an opportunity to file supplemental pleadings; and

---

[1] The Trustee added:

> [T]he mechanic's lien [statute] provides at §§ 19 and 20 that the officer in charge of the sale shall give notice of the time and place of the sale and at [sic] that the owner of the property may redeem the property (pay the amount due and keep the property) for 90 days following the sale. See also, *Understanding Mechanic's Liens (MA)*, Practical Law Practice Note w-000-1689 ("The owner can avoid the sale of the property by settlement, including payment in full of the disputed amounts or providing a lien bond to dissolve the mechanic's lien."). As such, UMass Memorial has no choice but to either pay the claimants in exchange for full releases or defend the litigations [sic].

Whereas, on January 18, 2019, PPAS filed a Supplemental Objection disputing the existence of reciprocal obligations and the availability of recoupment to UMass Memorial, stating:

> All parties appear to concede that UMass presently has an obligation to the Debtor. . . . The core issue raised by PPAS in its briefing on the 9019 Motion, and at the hearing held on January 3, 2019, is whether the Debtor owes a reciprocal obligation to UMass upon payment by UMass to the Subcontractors;

and

Whereas, PPAS also argued:

> [T]he Service Agreement does not support a claim by UMass against the Debtor. The Debtor's failure to pay the Subcontractors is not a breach of the Service Agreement. Further, although the Service Agreement provides for indemnification in favor of UMass, it is limited in scope, covering only (i) damages related to a breach of the "Safeguarding of Patient and Medical Center Information" provisions in the services agreement and (ii) personal injury or damage to property resulting from the services performed or delivered by reason of negligence, reckless or intentional misconduct on the part of the Debtor. Indemnification of UMass for payment to the Subcontractors is not mentioned or required from the Debtor.

and

Whereas, the Trustee in his Response to PPAS's Supplemental Objection represented that in discussions with the Trustee, "UMass Memorial has asserted that in the event the dispute proceeds to litigation, it would assert and prevail on claims against the Debtor for (1) breach of the implied covenant of good faith and fair dealing, (2) unjust enrichment, and (3) breach of contractual indemnification obligations;" and

7

Whereas, the Trustee argued that "[i]n the event UMass Memorial is successful on any one of the asserted claims, it would recoup the full amount of Debtor funds in its possession (the "Funds"), leaving nothing left over for the bankruptcy estate;" and

Whereas, in In re High Voltage Eng'g Corp., 397 B.R. 579 (Bankr. D. Mass. 2007), *aff'd,* 403 B.R. 163 (D. Mass. 2009), this Court set forth the standard for approval of compromises under Fed. R. Bankr. P. 9019,

> The bankruptcy court essentially is expected to "'assess [ ] and balance the value of the claim[s] ... being compromised against the value . . . of the compromise proposal.'" Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995) (citation omitted). It may consider, among other factors: (1) the probability of success were the claim to be litigated-given the legal and evidentiary obstacles and the expense, inconvenience and delay entailed in its litigation-measured against the more definitive, concrete and immediate benefits attending the proposed settlement, *see* Kowal v. [Malkemus (In re Thompson)], 965 F.2d [1136] at 1141 n. 5, 1145 [ (1st Cir. 1992) ] (so-called "best interests" standard); (2) a reasonable accommodation of the creditors' views regarding the proposed settlement; and (3) the experience and competence of the fiduciary proposing the settlement. *See* Jeffrey, 70 F.3d at 185; In re Texaco, Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988) (citing Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)).

In re High Voltage Eng'g Corp., 397 B.R. at 601 (quoting In re Healthco Int'l, Inc., 136 F.3d 45, 50 (1st Cir. 1998)); and

Whereas, this Court also observed that in determining whether to approve a compromise, deference should also be given to the Trustee's judgment provided that the trustee can demonstrate that the proposed compromise falls within the "range of reasonableness," 379 B.R. at 601 (citations omitted), and that, in addition to the merits of a controversy, litigation costs and delay, and the wishes of creditors, public policy is a factor to consider, id.; and

8

Whereas, applying those factors, the Court concludes that the Trustee has satisfied his burden of establishing that the proposed compromise is within the range of reasonableness and that he has satisfied his burden under the standards articulated by the United States Court of Appeals for the First Circuit in <u>In re Healthco Int'l, Inc.</u>, 136 F.3d 45 (1st Cir. 1998), and <u>Jeffrey v. Desmond</u>, 70 F.3d 183 (1st Cir. 1995), *see also* <u>In re Wolverine Proctor & Schwartz, LLC</u>, No. 06-10815-JNF, 2009 WL 1271953, at *3–4 (Bankr. D. Mass. May 5, 2009), *aff'd sub nom.* <u>In re Wolverine, Proctor & Schwartz, LLC,</u> 436 B.R. 253 (D. Mass. 2010); and

Whereas, the Court concludes that given the expense, uncertainty, inconvenience, and delay associated with litigation among UMass Memorial, CSC and the Local 96 Entities, and the Trustee, the compromise is beneficial to the bankruptcy estate; and

Whereas, the Court also concludes that, although consideration should be given to PPAS's concern as the largest creditor, the Trustee has filed a 34-page, 16-count complaint against PPAS and others, and no other creditors have voiced objections to the Trustee's Compromise Motion, and

Whereas, deference to the judgment of the Trustee is warranted in this case as the Trustee is an experienced and knowledgeable fiduciary in bankruptcy cases and public policy supports a compromise and avoidance of litigation under the circumstances of this case,

Now, therefore, the Court shall enter an order granting the Trustee's Motion to Approve Compromise.

By the Court,

*[signature: Joan N. Feeney]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 22, 2019